UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MARY ANN CAMARDA,

                                    Plaintiff,

            -against-

THE CITY OF NEW YORK, RAYMOND KELLY,
POLICE COMMISSIONER OF THE NEW YORK
CITY POLICE DEPARTMENT, CAPTAIN ELWOOD
J. SELOVER, LIEUTENANT MICHAEL SCHAEFER,
SERGEANT HERBERT MAI, SERGEANT CHESTER
OLEARY, SERGEANT SMIRNOV, SERGEANT
ROBERT CRITELLI, SERGEANT RALPH MILONE,
SERGEANT CLARK BEIN-AIME, in their individual
and professional capacities.

                                    Defendants.
--------------------------------------------------------------------X

**COMPLAINT WITH JURY DEMAND**

Index No.:

Plaintiff, MARY ANN CAMARDA, by and through her attorneys, the law firm of

CRONIN & BYCZEK, LLP, as and for her Complaint against Defendants, respectfully sets forth

the following:

## NATURE OF ACTION

1.      This action is hereby commenced for the purpose of seeking to secure protection

of, and to redress the deprivation of, rights secured by the United States Constitution, Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, New York State Executive Law §

296, and New York City Human Rights Law § 8-107 et. seq., providing for relief based upon

Defendants unlawful employment practices of engaging in sexual harassment of Plaintiff,

discrimination based upon Plaintiff's gender, retaliation against Plaintiff for engaging in the

protected activity of formally complaining of said harassment, and the creation of a hostile work

environment.

1

## JURISDICTION

2.    The jurisdiction of this Court is invoked based upon federal question and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. § 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

3.    This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

4.    Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5.    The rights, privileges and immunities sought herein to be redressed are those secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and provisions against gender discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6.    On or about October 8, 2009, Plaintiff, MARY ANN CARMADA, in accordance with applicable law, filed a Verified Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

7.    Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon sex, sexual harassment, retaliation for engaging in protected activity, and the creation of a hostile work environment.

8.     On February 28, 2011, the EEOC issued a "Right to Sue" Letter advising Plaintiff

of the completion of her prerequisites to file suit in federal court.  Plaintiff received said "Right

to Sue" Letter on March 3, 2011. A copy of the "Right to Sue" Letter issued to Plaintiff is

annexed hereto as **Exhibit "A"**.

## VENUE

9.     Venue is proper within the Eastern District of this Court, County of New York,

State of New York, as the course of Defendants' conduct took place within the boundaries of the

County of Brooklyn, State of New York, and the instant causes of action are based upon

violations of the New York State Constitution, New York State Executive Law and New York

City Human Rights Law.

## PARTIES

10.     Plaintiff, MARY ANN CARMADA, is a female citizen of the United States and a

resident of Suffolk County, State of New York. At all times relevant to this action, Plaintiff

CARMADA was, and still is, a uniformed member of the New York City Police Department

where she served as a Police Officer for nearly twelve (12) years, commencing her employment

as a Police Officer on or about July 7, 1999.

11.     Defendant CITY OF NEW YORK is a municipal entity created and authorized

under the laws of the State of New York. Defendant CITY OF NEW YORK is authorized by law

to maintain a Police Department that acts as its agent in the area of law enforcement and for

which it is ultimately responsible.

12.     Defendant RAYMOND KELLY, a white male, has been Police Commissioner of

the New York City Police Department since January 2002 and was acting in such capacity at all

times relevant herein; he is sued in his official capacity.

3

13.     Defendant ELWOOD J. SELOVER, a white male, is a Captain in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

14.     Defendant MICHAEL SCHAEFER, a white male, is a Lieutenant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

15.     Defendant HERBERT MAI, a white male, is a Sergeant in the New York City Police Department, and he had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

16.     Defendant SERGEANT CHESTER O'LEARY, a white male, is a Sergeant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

17.     Defendant SERGEANT SMIRNOV, a white male, is a Sergeant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

18.     Defendant SERGEANT ROBERT CRITELLI, a white male, is a Sergeant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

19.     Defendant SERGEANT RALPH MILONE, a white male, is a Sergeant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the actions herein complained of; he is being sued in his individual and his official capacity.

20.     Defendant SERGEANT CLARK BEIN-AIME, a white male, is a Sergeant in the New York City Police Department and had supervisory authority over Plaintiff at the time of the

actions herein complained of; he is being sued in his individual and his official capacity.

## FACTS UNDERLYING PLAINTIFF'S CLAIMS

21.    Plaintiff commenced her employment for the New York City Police Department as a Police Officer on or about July 7, 1999.

22.    At all times during her employment with the NYPD, Plaintiff has performed her work satisfactorily and surpassed her goals and expectations. In fact, until filing an internal EEO complaint Plaintiff enjoyed excellent evaluations.

23.    Plaintiff currently works out of the Citywide Vandals Task Force, which is part of the Special Operations Division of the Transit Bureau. Plaintiff works with approximately 40 other officers, only 4 of whom are female.

24.    On or about January 21, 2009, Plaintiff filled out a summons voidance form for Sergeant Mai. Plaintiff made a few typographical mistakes and Mai asked her to fill out the form again which she did.

25.    On or about January 23, 2009, Mai asked Plaintiff to fill out the same summons voidance form. After confirming that he had already sent the summons out, Plaintiff asked the Sergeant if it was necessary at which point Mai became extremely irate and grabbed the summons out of Plaintiff's hands yelling, screaming and degrading Plaintiff in front of other employees. Mai yelled, "You're a girl and you can't type! I am giving you a command discipline for refusing an order." At this time, Plaintiff felt that she had become victim to a hostile work environment because she is female.

26.    From January 27, 2009 to January 29, 2009, Plaintiff was placed on foot post as

punishment for three (3) days in addition to her being issued command disciplines.

27.    On or about January 29, 2009 Plaintiff was forced to stand at the Howard Beach subway station directed by Sergeant O'Leary.  No other officers were made to stand in the cold weather which was windy, snowy and brutally cold.  Indeed, it was unnecessary for any officer to be standing out in the cold.

28.    Officer Claire Cranston also had a problem with Sergeant Mai and they had an argument and she was made to stand in the rain.  Eventually Cranston refused and Mai tried to claim she was disobeying an order.  Mai did not make male officers stand in the rain, they waited in their cars.  Officer Claire Cranston made a formal complaint.

28.    On or about January 30, 2009, Police Officer Vezzi and Police Officer Zimmerman overheard O'Leary and Mai bragging, joking, laughing, mocking and degrading Plaintiff about how cold Plaintiff was when they relived her from duty at Howard Beach.

29.    On or about February 24, 2009, Plaintiff changed her work schedule in order to avoid O'Leary and Mai, however this made matters worse.  Lieutenant Sonner, male, stated to Plaintiff about her new work schedule, "You know this is a set up for you to fail, coming to this tour." Clare Cranston, Supervisor of Police Assistants overheard Sonner make these comments. Plaintiff felt intimidated and again felt victim to a hostile work environment.

30.    Plaintiff was now under the direct charge of Sergeant Milone.  During March 2009, Plaintiff was assigned by Milone to a desk for six (6) days, given three (3) days of training, sent to the Medical District for three (3) days, causing her to have only eight (8) days on patrol making it difficult for Plaintiff to make arrests.  Plaintiff was put on desk detail more than the other officers in order to prevent her from making her required arrests so as to set her up for discipline.

6

31.     During April 2009, Plaintiff was assigned by Milone to eight (8) days at a desk, one (1) day at the Medical District, causing Plaintiff to have only four (4) days on patrol; again making it a difficult environment for her to reach her arrest quota.

32.     Further, NYPD Policy requires that arresting officers have a partner when making an arrest. Making it more difficult for Plaintiff to meet her quota, Plaintiff was not assigned a partner.

33.     On or about April 2009, Plaintiff filled out an official vacation form ("28") for April 26, 2009 which would give her an added day extension of her annual vacation week. Before Plaintiff left for her annual vacation she made sure that her "28" had been approved, which it had been on April 7, 2009. While Plaintiff was in California on vacation, during the aforementioned time period, she received numerous voice mails from Police Administrator Chou, a female, stating, "If you don't come in on April 26, 2009, Milone is going to hammer you with a command discipline….they are going to fuck you up if you don't come in." Milone denied her "28" request on April 20, 2009, while Plaintiff was on vacation, after it had been previously approved. Plaintiff was forced to report to Milone on April 26. 2009, cutting her vacation a day early, only to find Milone had given the "28" to Milone's driver and friend, Police Officer Marciano, a Male. Milone's intention in denying Plaintiff's "28" request was a further incident of discriminatory harassment.

34.     On or about April 29, 2009, Plaintiff advised Sergeant Bien-Aime, a male, that Plaintiff had a possible arrest on or about April 30, 2009. Plaintiff sought a partner in order to make the arrest. Bein-Aime told Plaintiff that he would not be available and that he would notify Sergeant Milone. Sergeant Milone assigned Plaintiff to Police Officer Milendez, a male, and Police Officer Rivera, a female, who had an arrest, scheduled themselves for April 30, 2009;

Plaintiff asked Sergeant Festa, a Male, to place her with Police Officer Styron, a Male, in order to have a better change to make her arrest. This request brought by Festa was denied by Milone. All male officers in the squad had a partner available to them immediately when they needed to make arrests.

35.     On or about May 4, 2009, Milone and Bein-Aime placed Plaintiff on an investigation, which was comprised of taking pictures of graffiti with Police Officer Dwyer, a Male and Police Officer Nuggent, a Male. The group went to three (3) different boroughs taking pictures of graffiti in order to help Dwyer and Nuggent make an arrest for the following day. This prevented Plaintiff from doing her own work and making her own arrests. Plaintiff did not receive credit for arrests made by Dwyer and Nuggent.

36.     On or about May 4, 2009, Plaintiff complained to ICO Lieutenant Richards, a Male, that items form her mailbox were missing:  coffee mugs, previous cases that she had been working on. She also complained to Richards that Mai had taken her name off her mailbox in January.

37.     In or about May 2009, Mai saw Plaintiff put her name back on and advised Plaintiff that he mailboxes were just for Sergeants. Since there were extra boxes she asked if she could use one and that Police Officer Barr, a Male, was using a mailbox and his name had never been taken off. This treatment evidenced disparate treatment aimed at Plaintiff. Mai refused.

38.     On or about May 7, 2009, Plaintiff asked Richards if he had spoken to Mai about the mailbox. Richards retorted, "I wish you would ask him yourself." Plaintiff was not given assistance by Richards in dealing with Mai, who was harassing her.

39.     On or about May 20, 2009 Plaintiff had a meeting with Milone and Sonner. Plaintiff complained of unequal treatment because she was a female and that it was difficult to be

8

productive in his squad. Plaintiff declared that she was not able to conduct any of her own investigations and was constantly a "third-wheel" on other officer's cases. Whereas other male officers were assigned partners, Plaintiff was not. Plaintiff was being consistently assigned to help another set of partners but was not given credit for their arrests.

40.    On or about May 27, 2009, Plaintiff again asked Richards about talking to Mai about her mailbox. Richards refused to help Plaintiff.

41.    On or about June 1, 2009, Plaintiff asked for a transfer from her 2:00 p.m. shift in order to escape Milone's discriminatory harassment. Sonner denied Plaintiff's request for a shift change.

42.    On or about June 10, 2009 Festa confronted Milone about this mistreatment of Plaintiff. Festa told Milone to stop abusing his authority and intimidating Plaintiff.

43.    On or about June 20, 20009, Milone asked the officers who complained against Plaintiff to write complaints on paper so that she was disciplined. Milone told other Sergeants in sum or substance, "If we stick together we can get her! I can't write her up, I have a family to protect."

44.    On or about June 16, 2009, Rivera told Plaintiff that on June 10, 2009 when roll call was conducted by Milone that both of his squads were addressed to take a poll on who does not want to work with Plaintiff. This made Plaintiff feel very intimidated and emotionally distraught.

45.    On or about June 25, 2009, Plaintiff was told by Festa that Milone had falsely accused her of acting unsafe and illegally by Dwyer, Nuggent and Ferone. These officers were advised by Milone to write an official complaint of lies about Plaintiff that circulated throughout the command.

9

46.     On or about June 25, 2009, Festa was transferred by Selover, as a result of the June 10, 2009 situation in which he tried to help Plaintiff.  Plaintiff, however, remained on Milone's squad.

47.     On or about June 25,2009, Festa told Plaintiff that the "real reason why Milone doesn't want you around is because he does not want you ratting him out, when he is running his business using NYPD department computers to run his business."  Milone's private business is named RCO AUTO SALES.

48.     Due to the fact that Plaintiff was forced to stay on Milone's squad, she experienced anxiety and stress at all times which effected her family life, due to the fact that she was dreading going back to work, during her time off.

49.     On or about July 16, 2009 Plaintiff reported to work and Lieutenant Schaefer, a Male, saw her and approved her tour change in order to be present at Court.  Plaintiff notified O'Leary that she needed a tour change in order to be present at Court.  O'Leary asked where her business attire was located and she responded that she was "wearing it" while holding her suit jacket in her hand.  O'Leary leered at her breast, pointed his finger within 2 inches of her décolletage and said, "No low cut shirts."  Plaintiff felt violated and very uncomfortable. O'Leary said in sum and substance "In the future, I will inspect you before you go out," making Plaintiff feel intimidated.

50.  Later that day, Plaintiff asked O'Leary if she was appropriate for Court and he replied "ok."  When Plaintiff went to sign out to leave, O'Leary asked her if she "knew what business attire" meant.  Chou overheard O'Leary say that he was going to go to the Courthouse to make sure that Plaintiff was not wearing jeans; even though she was not wearing jeans when he inspected her before she left.  O'Leary's intention was to harass Plaintiff.

51.     When Plaintiff returned from Court, O'Leary gave her a command discipline for not wearing business attire for Court.  No other officers that went to Court were inspected before going.  Plaintiff felt uncomfortable while O'Leary spoke of her low cut blouse and leered at her chest while pointing her finger within 2 inches of her décolletage.  Plaintiff was wearing a long sleeve V-neck blouse, a button up brown jacket and a brown pants suit.  No one in Court or at the station house commented on Plaintiff's business attire being unprofessional.  O'Leary's command discipline was another attempt to make Plaintiff both intimidated and uncomfortable at work.

52.     On or about July 20, 2009 Plaintiff filed an EEO charge within the department for the discrimination that she endured based on her sex.

53.     On or about July 21, 2009, Plaintiff spoke to PBA Delegate Bermudez.  He informed Plaintiff that he had spoken with Selover about Plaintiff's aforementioned command discipline for improper attire.  O'Leary stated that Plaintiff "never came to me" before she went to Court.  This was a lie.  Police Officer Fernandez, a Male, came with Plaintiff to witness her inspection so that he could speak on her behalf in case O'Leary attempted to later harass Plaintiff by lying about her dress attire.

54.     On or about July 30, 2009, around 11:30 a.m. Plaintiff picked up a search warrant for a camera that had potential evidence for an arrest for Graffiti.  Milone called Schaefer at home and told Schaeffer that Plaintiff had the camera at home, which was untrue.  Plaintiff was told to report to the station with the camera and search warrant, Plaintiff lives about 1 ½ hours from the station.  Plaintiff called midnight Sergeant Hassler, a Male, and told him that she would be in at 1 o'clock a.m.  Selover directed Hassler to check Plaintiff when she reported to work to see if she was fit for duty, which had nothing to do with her returning the camera.  Plaintiff

11

reported back to work to Sonner. She told him that the camera was in her locker. Sonner informed Plaintiff that Schaeffer and Selover were trying to "get her" for not being "fit for duty". In addition, he told Plaintiff that Schaeffer and Selover called the Advocate's office to check if they could "get" Plaintiff charges for taking the camera home. When they realized that Plaintiff did not take the camera home, they tried to "get her" for not being fit for duty. Milone asked Hassler to give Plaintiff a command discipline but Hassler refused to be part of Milone's ploy to discriminate and retaliate against Plaintiff.

55.    On or about August 20, 2009 Plaintiff was to write a cell phone summons for roll call. Plaintiff left the command station with Police Officer Jones, a Male, who was her partner for the day. Plaintiff was heading to a different precinct to make an arrest. While she was waiting for the party to arrive she received eight (8) calls from Bein-Aime who told her that she needs to do her summons. Plaintiff told him that she would after she finished processing her arrest. Bein-Aime came down to the other precinct and pulled Plaintiff off the arrest processing. He told Plaintiff that she was to leave the arrest and write the summons with him. Plaintiff told him that she was processing an arrest. Bein-Aime said to leave it with her partner, Jones. Plaintiff's tax number was on the forms, which made Plaintiff responsible for the arrest. Plaintiff tried to explain this to her partner, but she was rushed out by Bein-Aime. Bein-Aime was very unprofessional and placed Plaintiff in a stressful situation. Bein-Aime never informed the desk sergeant, who is in charge of all officers in his command, of the situation. Bein-Aime interfered with Plaintiff's work product and created an intimidating situation.

56.    On or about the same day, Plaintiff wrote the cell phone summons and when she returned to the command Bein-Aime told her that when Plaintiff comes in on Sunday she has to write 20 summonses and all of her vacation dates would be denied indefinitely. When Plaintiff

asked why this was happening, Bein-Aime responded, "Because you were never going to write the summons" for that night. Plaintiff told him that she would have had enough time after she had completed her arrest. Bein-Aime stated that he did not believe that she would have written the summons. Bein-Aime informed her that Schaeffer had ordered the reprimand. Plaintiff felt that she was being retaliated against due to the fact that she had made an EEO charge. Cohen and Styron did not write summons for the last summons initiative in March 2009 and they were neither reported nor reprimanded.

57.     On or about August 24, 2009 Bein-Aime ridiculed Plaintiff on her performance for an arrest made on August 20, 2009. Under pressure from Bein-Aime on August 20, 2009, Plaintiff initially wrote the wrong address on the complaint work sheet, however, Plaintiff corrected the mistake. Bein-Aime talked down to Plaintiff, telling her that she needs to be more observant, when Bein-Aime was the sergeant that was reviewing her work and he missed the mistake.

58.     On or about September 10, 2009 Plaintiff worked from 8:00 to 2:30 assigned to Brooklyn Family Court. Plaintiff returned from Court to the command at around 2:00 p.m. Plaintiff had an arrest lined up with Jones who reports to work at around 2:00 p.m. Roll call started at around 2:00 p.m. conducted by Sergeant Critelli and Sergeant Conwell, both Males. They announced at roll call that Jones and Plaintiff will be picking up an arrest. Schaeffer was present at roll al. Schaeffer asked who authorized Plaintiff to make that arrest. He then stated "She is working inside when she gets back from court." When Plaintiff walked in, at approximately 2:05 p.m. she was ready to go out and make the arrest. Plaintiff was advised by Critelli that Schaeffer did not authorize her to go out and make that arrest. Plaintiff confronted Schaeffer, telling him that she would like to leave and make that arrest because she would like to

have a name on her arrest sheet before she went on vacation. Schaefer started yelling at Plaintiff and flaring his arms, "You need to make your collars on straight time like everyone else." Plaintiff told him it only 2:30 p.m. and that she was still on straight time for two (2) hours. Schaeffer asked how many arrests she owed him. Plaintiff responded four (4). Schaeffer responded "Where were you the other quarters?" Plaintiff told him that she made four (4) arrests in July and another four (4) in August. Schaeffer asked, "What about the other quarters?" Plaintiff stated "I was on the desk (inside) not able to make any arrests." Plaintiff needed to make four (4) arrests for the end of the quarter (which is the end of September). Schaeffer told Plaintiff to, "Stop talking, I am ordering you to stop talking, you owe me four (4) collars if you don't get them you are done."

59.     Subsequent to being denied her opportunity to make an arrest, Schaeffer put Plaintiff on desk detail so that she could not make arrests; these actions by Schaeffer demonstrated retaliatory activity in order to terminate Plaintiff, to undesirable work schedule of 9:30 p.m. to 6:00 a.m. Velazquez and Police Officer Thybulle, a Male, worked at the same shift as Plaintiff and they had an arrest lined up at the end of their tour, they received six (6) hours overtime for an arrest. These officers were authorized for arrest overtime; Plaintiff asked for the same and was denied by Schaeffer. Schaeffer acted unprofessionally, creating a hostile work environment by threatening Plaintiff, treating her unfairly and setting her up to fail because she filed an EEO complaint.

60.     On or about September 24, 2009, the Warrants Squad contacted Plaintiff and requested that she renew her commendation from Captain Selover which she received on or about May 25, 2009, in order to be considered for a position within their unit. Plaintiff previously submitted an application and recommendation to this unit and then sent a renewal

14

recommendation on October 25, 2009 fro Selover.  Plaintiff asked Selover to renew the

recommendation and he told her that she did not have enough arrests to receive his

recommendation, which he had given her earlier.  The required amount of arrests for the year

was 18 and Plaintiff had 19, but Selover refused to acknowledge five (5) of the arrests.  Selover's

discriminatory activity has made it impossible for Plaintiff to get a transfer to a new unit.  This

discrimination and harassment has been retaliatory concerning the EEO complaint that Plaintiff

had brought against the male officers in her squad.  By not signing the recommendation, Selover

is stopping Plaintiff from furthering her career.

61.     On or about September 24, 2009, during the same meeting with Selover, Plaintiff

was told that she was currently under investigation for bringing evidence home with her, (the

aforementioned camera incident.  Sonner had told Schaeffer that Plaintiff did not bring the

camera home with her.  This investigation is further evidence of retaliatory measures taken

against Plaintiff in order to harass and discrimination against her.

62.     On or about September 28, 2009, Schaeffer told Bein-Aime that other sergeants

and he should increase surveillance on Plaintiff.

63.     On or about October 1, 2009, Plaintiff was transferred to the 9:30 p.m. to 6:00

a.m. shift, which is seen as both a punishment and the worst possible shift available for an

officer.  Furthermore, as the command knew, Plaintiff's husband, an NYPD officer, worked her

shift and days off.  This transfer of hours was also punitive on a personal level.

64.     On or about January 10, 2010 Plaintiff prepared a memo to Detective Loftin Batts

in the NYPD EEO regarding retaliation, negative evaluation and transfer. Said memo also

concerned an unjustified negative evaluation Plaintiff received from Sgt. Murray.  Plaintiff

alleges that Sgt. Murray consulted with Sgt. Milone and Captain Selover against whom Plaintiff

had complained against for retaliation, and in further retaliation they directed Murray to render a poor evaluation.

64.    On or about June 28, 2010 Sgt. Milone told Captain Selover that Plaintiff's locker was not secure. Plaintiff's locker was secure before Sgt. Milone inspected it.

65.    On or about June 29, 2010 Plaintiff made a complaint and notified IAB log number 10-327-87 and spoke to Det. William in reference to Plaintiff's locker being tampered with. Plaintiff notified Captain Selover and Sgt. Milone on June 28, 2010 of the situation. Both Captain Selover and Sgt. Milone failed to notify IAB.

66.    P.O. Ocasio was authorized by Lt. Schaeffer to see his doctor on job time for a line of duty incident which occurred on July 27, 2010. Plaintiff asked Lt. Schaeffer to do the same. On July 6, 2010 Lt. Schaeffer denied Plaintiff the authorization and told Plaintiff that she was not allowed to see your private doctor on job time for a line of duty despite allowing male officers to do so.

67.    On or about July 28, 2010 Plaintiff made a complaint that Captain Selover and Sgt. Milone failed to notify IAB log number 10-378-74. Plaintiff spoke to P.O. Bally.

68.    On or about September 9, 2010 Plaintiff's Cobra bag was missing from a desk from the female locker room.

69.    On or about September 17, 2010 Plaintiff spoke to Captain Selover over the phone and asked Captain Selover for an E-day (emergency day off) for September 24, 2010. Captain Selover asked Plaintiff why she needed an E-day. Plaintiff explained that he mother was having a procedure. Captain Selover denied Plaintiff's request and told Plaintiff we are down police officers in the field because of you guys. (Meaning limited duty status – Plaintiff had recently sustained a line of duty injury).

70.   On or about September 24, 2010 the 1st platoon had three police officers that are limited/restricted, one of which was the Plaintiff.  These officers answer phones.  When Plaintiff reported for duty that evening, she found that a male officer Joseph Stiles who is on limited duty as Plaintiff was granted an E-day which was approved by Sgt. Mai and Captain Selover.  Once again Plaintiff was treated unfairly and retaliated against by Captain Selover and Sgt. Mai due to the fact that she is a female and complained of her unfair treatment.  In addition, on September 18, 2010 Scott Syron a male officer was granted an E-day approved by Captain Selover.

71.   On or about January 10, 2011 Plaintiff called IAB to report misconduct against Sgt. Milone for using department computer and hacking into Plaintiff's online account between August 1, 2010 and August 11, 2010.  The complaint is logged under IAB log number 11-012-47 Det. Rodriguez.

72.   On or about January 14, 2011 Plaintiff called IAB with additional information and advised IAB with more specific dates – July 30, 2010 and July 31, 2010.  In addition, Plaintiff advised IAB that Sgt. Milone put a device on a department computer so he could read Plaintiff's email password.

73.   On or about February 4, 2011 Plaintiff advised Captain Selover, the Captain of the Citywide Vandal's Task Force in writing and verbally that Plaintiff was interested in the EEO liaison position for Plaintiff's command.  In addition, Plaintiff filled out an application in 2010, a year prior and informed him that she was interested in the position.  Captain Selover told Plaintiff when it becomes available he will consider Plaintiff.  Selover advised Plaintiff on February 4, 2011 when Plaintiff handed him her application that he gave the position to a civilian employee, P.A. Chou.   Captain Selover stated that he was in contact with the office of EEO and they suggested to have the vacated position filled by a civilian.

74.     On or about March 24, 2011 Plaintiff appeared for a GO-15 hearing with Lt. Valenti from the Absence Control Unit regarding Plaintiff's misuse of sick leave.  On September 11, 2010 someone anonymously sent in a video tape of Plaintiff carrying a cooler on the boardwalk in Long Beach.  Plaintiff had attended a volleyball tournament for the Michele O'Neill foundation to help raise money for children with cancer.

75.     At the GO-15 they advised Plaintiff that someone hired a private investigator to watch Plaintiff doing activities and sent it to the PC Office, Absence Control and IAB.  Absence Control did do surveillance on Plaintiff 14 times and found no disciplinary action against Plaintiff.

76.     Additionally, Lt. Valenti asked Plaintiff at the GO-15 "do you have any relationship with Ralph Milone beyond a working relationship?"  "Are you sure you didn't have a relationship with this guy?"  Plaintiff stated that she was married.  Lt. Valenti said "this is the police department, it doesn't mean anything when someone is married."  Lt. Valenti then asked Plaintiff's Counsel Jeffrey Goldberg, Esq. "are you sure she isn't having a sexual relationship with Ralph Milone?"  Upon information and belief, they do not ask male officer if they are having an affair or sexual relationship.

77.     On March 28, 2011 Plaintiff spoke to Det. Collura from the "Threat Assessment Unit."  Det. Collura informed Plaintiff that his Sergeant said he could not help Plaintiff and referred Plaintiff to IAB.

## AS AND FOR PLAINTIFF'S FIRST CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF 42 U.S.C. § 1983

78. Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs "1" through "77" with the same force and effect as if fully set forth herein.

79.    Defendants are in violation of 42 U.S.C. §1983, which authorizes this Court to redress the deprivation of rights, privileges and/or immunities secured by the United States Constitution that occur under color of state law.

80.    Throughout the events recited herein, the Defendants while acting under color of law, subjected plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution and Civil Rights as guaranteed under Article I, Section II of the New York State Constitution, based on plaintiffs gender, and in retaliation for plaintiff's opposition to discrimination, in violation of 42 U.S.C. §1983.

81.    As a result, plaintiff has been deprived of her Constitutional Rights, been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions.  The actions of defendants in depriving Plaintiff of her constitutional rights, as hereinbefore stated, were willful and malicious.

82.    As a result of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00) plus legal expenses.  As a result of Defendants= actions, Plaintiff has suffered economic loss and continues to suffer to this day.

## AS AND FOR PLAINTIFF'S SECOND CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED, BASED UPON SEXUAL HARASSMENT

83.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "82" above, as if fully set forth herein.

84.  Defendant discriminated against Plaintiff by engaging in severe and pervasive activities constituting sexual harassment, including, but not limited to, engaging in, condoning

and tolerating sexually suggestive, lewd and vulgar comments, images and jokes, unwelcome and offensive touching and discrimination against Plaintiff with respect to the terms, conditions and privileges of her employment. The cumulative effect of Defendants' conduct has created an abusive, offensive and contaminated work atmosphere.

85.    The named Defendants condoned, tolerated and undertook these unlawful actions while acting in their individual and professional capacities as Plaintiff's supervisors.

86.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by 42 U.S.C. §2000e-2.

87.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from her employment with Defendants; the denial of a safe and hostile-free environment; and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

88.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

### AS AND FOR PLAINTIFF'S THIRD CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED, BASED UPON RETALIATION

89.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "88" above, as if fully set forth herein.

90.    Based upon the above, plaintiff was discriminated against by defendants by being forced to endure continued and repeated harassment.

91.    The Defendant intentionally and willfully harassed plaintiff and permitted plaintiff to

be harassed in employment by retaliating against Plaintiff for exercising her lawfully protected right to formally complain of Defendants' discrimination and sexual harassment. Defendants retaliated against Plaintiff by denying her of the conditions, terms and privileges of her employment. The cumulative effect of Defendants' conduct created an abusive, offensive and contaminated work atmosphere.

92.     No significant action was taken by defendant, CITY OF NEW YORK, its OEEO division, or its agents, to stop the sexual harassment of plaintiff, thereby contributing to a hostile work environment.  Defendants condoned, tolerated and undertook these unlawful retaliatory actions while acting in their individual and professional capacities as Plaintiff's supervisors.

93.     By engaging in the acts set forth in the preceding paragraphs, the named Defendants engaged in an unlawful employment practice as defined by 42 U.S.C. '§2000e-3 (a).

94.     As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from her employment with Defendants; the denial of a safe and hostile-free environment; and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

95.     Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

### AS AND FOR PLAINTIFF'S FOURTH CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED, BASED UPON GENDER

96.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "95" above, as if fully set forth herein.

97. Defendants, in their individual and professional capacities, discriminated against

Plaintiff based upon her gender by treating similarly situated male employees more favorably. The cumulative effect of Defendants' conduct created an abusive, offensive and contaminated work atmosphere.

98.    The named Defendants condoned, tolerated and undertook these unlawful discriminatory actions while acting in their individual and professional capacities as Plaintiff's supervisors.

99.    By engaging in the acts set forth in the preceding paragraphs, the named Defendants engaged in an unlawful employment practice as defined by 42 U.S.C. § 2000e-2.

100.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from her employment with Defendants; the denial of a safe and hostile-free environment; and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

101.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S FIFTH CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED, BASED UPON HOSTILE WORK ENVIRONMENT

102.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "101" above, as if fully set forth herein.

103.    Defendants engaged in activities which created a hostile working environment for Plaintiff, including, but not limited to, subjecting Plaintiff to unwanted and offensive physical touching, crude and derogatory sexual comments, jokes and images, unwarranted criticisms and

complaints, embarrassment and humiliation, and refusing to respond to Plaintiff's demands to cease and desist said discrimination and harassment.

104.    The named Defendants acted in their individual and professional capacities. No significant action was taken by defendant, CITY OF NEW YORK, to stop the sexual harassment of Plaintiff, thereby contributing to a hostile work environment.

105.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by 42 U.S.C. § 2000e-2 for which they are liable.

106.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

107.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).


**AS AND FOR PLAINTIFF'S SIXTH CLAIM AGAINST ALL DEFENDANTS**
**PURSUANT TO VIOLATIONS OF**
**NEW YORK STATE EXECUTIVE LAW § 296 BASED UPON GENDER**

108.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "107" above, as if fully set forth herein.

109.    Defendants, in their individual and professional capacities, discriminated against Plaintiff based upon her gender by treating similarly situated male employees more favorably. The cumulative effect of Defendants= conduct created an abusive, offensive and contaminated work atmosphere.

**110.**    Named defendants condoned, tolerated and undertook

23

these actions while acting in their individual and professional capacities as Plaintiff's supervisors.

111.    As a result of Defendants' gender discrimination, Plaintiff suffered significant adverse employment actions.

112.    By engaging in the acts set forth in the preceding paragraphs, the named Defendants engaged in an unlawful employment practice as defined by New York Executive Law ' 296(a).

113.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from her employment with Defendants; the denial of a safe and hostile free environment; and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

114.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

### AS AND FOR PLAINTIFF'S SEVENTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK STATE EXECUTIVE LAW § 296 BASED UPON SEXUAL HARASSMENT

115.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "114" above, as if fully set forth herein.

116. Defendants, in their individual and professional capacities, discriminated against Plaintiff by engaging in severe and pervasive activities constituting sexual harassment, including, but not limited to, engaging in, condoning and tolerating sexually suggestive, lewd and vulgar comments, images and jokes, unwelcome and offensive touching, and discrimination against

Plaintiff with respect to the terms, conditions and privileges of her employment. The cumulative effect of Defendants' conduct has created an abusive, offensive and contaminated work atmosphere. The named Defendants undertook these actions while acting in their individual and professional capacities as Plaintiff's supervisors.

117.    As a result of this sexual harassment, Plaintiff suffered adverse employment action, including, but not limited to, the denial of overtime, receipt of poor evaluations, and unwarranted discipline.

118.    By engaging in the actions set forth in the preceding paragraphs, Defendants engaged in an unlawful discriminatory practice, as defined by New York Executive Law § 296 1(a).

119.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants, the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

120.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S EIGHTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK STATE EXECUTIVE LAW § 296 BASED UPON RETALIATION

121.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "120" above, as if fully set forth herein.

122.    Defendants engaged in activities constituting retaliation against Plaintiff for her complaints, and in opposition to the sexual harassment and gender discrimination of Plaintiff,

including, but not limited to, subjecting Plaintiff to derogatory comments and hostility, unwarranted criticisms and complaints, embarrassment and humiliation in front of other employees, and refusing to respond to Plaintiff's demands to cease and desist the discrimination and sexual harassment. The named Defendants, in their individual and professional capacities, retaliated against Plaintiff because she opposed practices made unlawful by New York Law Executive Law § 296.

123.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by New York Executive Law § 296(1) for which they are liable.

124.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants and the embarrassment, humiliation and mental and emotional distress and financial loss suffered as a consequence of Defendants' actions.

125.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S NINTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK STATE EXECUTIVE LAW § 296 BASED UPON HOSTILE WORK ENVIRONMENT

126.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "125" above, as if fully set forth herein.

127.    Defendants engaged in activities which created a hostile working environment for Plaintiff, including, but not limited to, subjecting Plaintiff to unwanted and offensive physical touching, crude and derogatory sexual comments, jokes and images, unwarranted criticisms and

complaints, embarrassment and humiliation, and refusing to respond to Plaintiff's demands to cease and desist said discrimination and harassment.

128.    The named Defendants acted in their individual and professional capacities.

129.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by New York Executive Law ' 296(1) for which they are liable.

130. As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants and the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

131.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

### AS AND FOR PLAINTIFF'S TENTH CLAIM PURSUANT TO VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107 BASED UPON HOSTILE WORK ENVIRONAMENT

132.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "131" above, as if fully set forth herein.

133.    Defendants engaged in activities that created a hostile working environment for Plaintiff based upon Defendants= continuous and persistent sexual harassment of Plaintiff, Defendants= discriminatory behavior based upon Plaintiff=s gender and in retaliation for Plaintiff's lawful exercise of her First Amendment Rights, and Defendant=s refusal to respond to Plaintiff's demands to cease and desist.

134.    The named Defendants acted in their individual and professional capacities.

135.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by New York City Human Rights Law ' 8-107 for which they are liable.

136.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges rising from her employment with Defendants, and also the embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

137.    Because of the foregoing Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S ELEVENTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107  BASED UPON GENDER

138.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "137" above, as if fully set forth herein.

139. Defendants discriminated against Plaintiff by engaging in activities constituting gender discrimination, including, but not limited to, condoning, tolerating and engaging in discriminatory conduct against Plaintiff with respect to the terms, conditions and privileges of her employment because of her gender.

140. Defendants discriminated against Plaintiff by engaging in activities constituting discrimination based upon Plaintiff's gender, including but not limited to: condoning, tolerating and engaging discriminatory behavior

141.    The named Defendants, condoned, tolerated and undertook these actions while acting in their individual and professional capacities as plaintiff's supervisors.

142.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged

in an unlawful employment practice as defined by New York City Human Rights Law ' 8-107 for which they are liable.

143.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants and has suffered embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of the defendants' actions.

144.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S TWELFTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107  BASED UPON RETALIATION

145.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "144" above, as if fully set forth herein.

146.    Defendants engaged in retaliatory activities against Plaintiff for her complaints and objections to the discrimination based upon gender and sexual harassment, including but not limited to, derogatory and lewd sexual comments, unwarranted criticisms, complaints and orders to transfer, embarrassment and humiliation in front of other employees, and refusing to respond to Plaintiff's demands to cease and desist.

147.    The named Defendants condoned, tolerated and undertook these actions while acting in their individual and professional capacities as Plaintiff's supervisors.

148.    By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by New York City Human Rights Law ' 8-107 for which they are liable.

29

149.   As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities and privileges arising from her employment with Defendants and has also suffered embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

150.   Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR PLAINTIFF'S THIRTEENTH CLAIM AGAINST ALL DEFENDANTS PURSUANT TO VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107 BASED UPON SEXUAL HARASSMENT

151.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "150" above, as if fully set forth herein.

152.   Defendants, in their individual and professional capacities, discriminated against Plaintiff by engaging in severe and pervasive activities constituting sexual harassment, including, but not limited to, engaging in, condoning and tolerating sexually suggestive, lewd and vulgar comments, images and jokes, unwelcome and offensive touching, and discrimination against Plaintiff with respect to the terms, conditions and privileges of her employment. The cumulative effect of Defendants= conduct has created an abusive, offensive and contaminated work atmosphere.

153.   The named Defendants condoned, tolerated and undertook these actions while acting in their capacities as Plaintiff's supervisors.

154.   By engaging in the acts set forth in the preceding paragraphs, Defendants engaged in an unlawful employment practice as defined by New York City Human Rights Law ' 8-107 for which they are liable.

155.    As a result of the foregoing, Plaintiff has suffered injury and incurred damages because of the denial of career opportunities arising from her employment with Defendants and has also suffered embarrassment, humiliation and mental and emotional distress and financial loss as a consequence of Defendants' actions.

156.    Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

**AS AND FOR PLAINTIFF'S FOURTEENTH CLAIM AGAINST ALL DEFENDANTS**
**(MONELL CLAIM)**

157.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "156" above, as if fully set forth herein.

158.    Defendant, CITY OF NEW YORK, has embarked on a course of conduct that deprives Plaintiff and other female police officers of their rights under the United States Constitution and federal and state law in violation of 42 U.S.C. '1983.

159.    The actions of defendants, acting under of color of state and local law, custom and usage, have deprived Plaintiff and will deprive other female police officers in the future of their rights, privileges and immunities under the laws and Constitution of the United States, and in particular, their right to be free of employment practices that are based solely on gender and retaliation.

160.    By these actions, defendants have jointly and severally deprived Plaintiff of her rights under the Fourteen Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

161.    By virtue thereof, Plaintiff is entitled to a permanent injunction against the NYPD, together with compensatory and punitive damages, prohibiting the Defendants from

continuing to violate plaintiff's civil rights as hereinbefore stated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

1.   Declaring that the aforementioned discriminatory actions of Defendants are unconstitutional, and are in violation of the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1983, the New York State Constitution, New York State Executive Law §296, and New York Civil Rights Law §8-107;

2.   Granting Plaintiff money damages in the amount of no less than FIVE MILLION DOLLARS ($5,000,000.00) in compensatory damages or in an amount to be proven at trial for each cause of action;

4.   Granting Plaintiff, TWO MILLION DOLLARS ($2,000,000.00) in punitive damages;

5.   Granting Plaintiff injunctive relief;

5.   Granting Plaintiff all costs for this action, including reasonable attorneys fees incurred by Plaintiff; and

6.   Granting Plaintiff such other and further relief as may be just and proper.

## JURY TRIAL

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

**PRAYER FOR RELIEF**

**Wherefore,** Plaintiff demands compensatory and punitive damages from these

Defendants' jointly and severally, in an amount to be determined at trial, plus any and all

available statutory remedies, both legal and equitable, and interests and costs.

Dated: Lake Success, New York
      June 1, 2011

                              Yours etc,
                              Cronin & Byczek, LLP

                              LINDA M. CRONIN (LC7066)
                              Attorneys for Plaintiff
                              1983 Marcus Ave, Suite C-120
                              Lake Success, New York 11042
                              (516) 358-1700

24

Exhibit "A"



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5067 6902

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

February 28, 2011

Ms. Mary Ann Camarda
c/o Linda M. Cronin, Esquire
Law Office of Cronin & Byczek
Attorney at Law
1983 Marcus Ave., Ste. C-120
Lake Success, NY  11042

Re:  EEOC Charge Against New York City Police Dept.
     No. 846200958666

Dear Ms. Camarda:

   Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC
New York District Office, New York, NY.

   This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                                    Sincerely,

                                    Thomas E. Perez
                              Assistant Attorney General
                                 Civil Rights Division

                           by  *[signature]*

                                 Karen L. Ferguson
                           Supervisory Civil Rights Analyst
                           Employment Litigation Section

cc: New York District Office, EEOC
    New York City Police Dept.

*Index No.*                           *Year 20*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY ANN CAMARDA,

                                    Plaintiff,

        - against -

THE CITY OF NEW YORK, ET AL,

                                    Defendants.

## SUMMONS AND COMPLAINT

Cronin & Byczek, LLP
1983 Marcus Avenue
Suite C-120
Lake Success, New York  11042

(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                           *is hereby admitted.*

*Dated:*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Attorney(s) for*

### PLEASE TAKE NOTICE

☐ **NOTICE OF ENTRY**  *that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*                *20*

☐ **NOTICE OF SETTLEMENT**  *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
*one of the judges of the within named Court,*
*at*
*on*                           *20*        *, at*                *M.*

*Check Applicable Box*

*Dated:*

Cronin & Byczek, LLP
1983 Marcus Avenue
Suite C-120
Lake Success, New York  11042

*To:*