UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARY ANN CAMARDA,

        Plaintiff,

   - against -

CITY OF NEW YORK, RAYMOND KELLY, in
his official capacity, CAPTAIN ELWOOD J.
SELOVER, LIEUTENANT MICHAEL
SCHAEFER, SERGEANT HERBERT MAI,
SERGEANT CHESTER O'LEARY, SERGEANT
ANDREY SMIRNOV, SERGEANT ROBERT
CRITELLI, SERGEANT RALPH MILONE,
SERGEANT CLARK BEIN-AIME, in their
individual and official capacities,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-2629 (RRM) (VMS)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff Mary Ann Camarda, formerly employed as a police officer in the New York City Police Department ("NYPD"), brings this action against the City of New York ("City") and her former supervisors for gender discrimination and related claims. She alleges that she suffered sexual harassment and a hostile work environment and that she was retaliated against when she complained about this treatment. Defendants have moved for summary judgment on all claims. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND[1]

    Camarda was hired as a police officer with the NYPD on July 7, 1999. (Pl. Resp. to Defs.' Rule 56.1 Statement (Doc. No. 47-5) at ¶ 2.) In March 2006, Camarda was transferred to

---

[1] Other than the noted disputes, the following section contains undisputed facts culled from the defendants' Local Rule 56.1 Statement and Camarda's responses. (*See* Pl. Resp. to Defs.' Rule 56.1 Statement (Doc. No. 47-5).) Disputes are resolved in Camarda's favor. *See Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003). For ease of reference, the Court cites to Camarda's Response to defendants' Rule 56.1 Statement rather than to defendants' Rule 56.1 Statement, as Camarda's Response incorporates all of defendants' allegations.

the Brooklyn Citywide Vandals Task Force ("CVTF"), which operates within the Special Operations Division of the NYPD Transit Bureau and is responsible for preventing and reducing graffiti and vandalism city-wide, with a particular focus on the transit system. (*Id.* at ¶¶ 3–4.) While the majority of CVTF is male, there were four other female officers assigned to CVTF "over the years" as well. (*Id.* at ¶ 5; Elwood Selover Deposition (Doc. No. 47-3 at Ex. D) ("Selover Dep.") at 36.)

In her first year at CVTF, Camarda was assigned to take telephone complaints from citizens reporting graffiti as part of an NYPD program. (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 7.) Her initial supervisor, defendant Sergeant Herbert Mai, gave her a positive performance evaluation after she started, but in a memorandum dated February 21, 2007, advised Captain Elwood Selover the commanding officer of CVTF, that Camarda had some performance issues. (*Id.* at ¶¶ 7–9.) Specifically, Mai informed Selover, that Camarda had: (1) violated uniform instructions; (2) been found watching a movie at the front-desk computer in violation of one of Selover's directives; (3) inadequately entered database entries; and (4) responded rudely to Mai's admonishment regarding the aforementioned uniform violation. (*Id.* at ¶ 10.) Camarda does not dispute that this memorandum was filed, but denies that the underlying incidents actually occurred. (*Id.*) Mai described further performance issues in memoranda issued on July 5, 2007, and February 11, 2008, and while Camarda again admits the memoranda were filed, she denies the allegations contained therein. In the July 5 memorandum, Mai stated that Camarda had: (1) deviated from her regular tour without permission; and (2) made inappropriate statements to superior officers, and noted that Camarda would be issued two minor violations for her infractions. (*Id.* at ¶ 11.) In the February 11 memorandum, Mai wrote that Camarda made "sarcastic and antagonistic comments" about him during roll call, and that she had "a habit of

2

making ridiculous and implicit comments without merit or basis." (*Id.* at ¶ 12.)

On January 23, 2009, Mai asked Camarda to correct and retype a summons violation form several times. (*Id.* at ¶ 14.) She responded "I would do it, but it's always going to be incorrect for you. And if you sent it in already, why do I have to type it up again?" (*Id.*) At this point, Mai grabbed the summons from Camarda and yelled, "You're a girl and you can't type! I am giving you a command discipline for refusing an order," (the "Mai Comment"). (Mary Ann Camarda Deposition (Doc. No. 47-6 at Ex. 1) ("Camarda Dep.") at 47.) In the ensuing command discipline, Mai noted that Camarda committed numerous errors in the summons violation form and refused to "cease all unnecessary conversation regarding her assignment." (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 13.) Camarda was penalized with a loss of vacation time and placed on a fixed outdoor foot post at the Howard Beach subway station from January 27–29. (*Id.* at ¶ 15.) At his deposition, CVTF Officer Elias Fernandez testified that no officers other than Camarda were assigned to Howard Beach as a fixed post during his tour, but he was aware of other male officers being assigned fixed outdoor posts elsewhere. (*Id.* at ¶ 17; Elias Fernandez Deposition (Doc. No. 47-6 at Ex. E) ("Fernandez Dep.") at 26–27.)

Camarda testified that in March or April 2009, defendant Sergeant Ralph Milone placed her on "desk detail" in order to prevent her from making arrests. (Camarda Dep. at 59–60.) She further testified that a lieutenant told her "they don't want you around because you are a female." (*Id.*) Milone testified that he separated Camarda from her partner at her partner's request, and that because there was no other available officer, Camarda was not assigned a steady partner on Milone's platoon. (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶¶ 77–78.) Instead, Camarda worked on a rotation basis with various officers on that platoon. (*Id.* at ¶ 79.) Camarda "denies the veracity" of Milone's testimony, but admits that she worked on a rotation basis. (*Id.* at 77–

3

79.)  In addition, one colleague testified that Milone encouraged him and others to discipline Camarda.  (Dep. of Robert Festa (Doc. No. 47-6 at Ex. C) ("Festa Dep.") at 18.)

Camarda testified that she put in an official request for a vacation day on April 26, 2009, which would have extended her annual week-long vacation by one day, and that request was approved on April 7, 2009.  (Camarda Dep. at 72–73.)  However, she received a call from a colleague on April 20 telling her that if she didn't report for work on April 26, "Milone is going to hammer you with a command discipline.  They are going to fuck you up if you don't come in."  (*Id.*)  As a result of this message, Camarda reported for work on April 26, 2009.  (*Id.*)

On July 17, 2009, defendant Sergeant Chester O'Leary issued Camarda a command discipline in which he stated that she had failed to report for inspection prior to a court appearance, was found to be wearing inappropriate clothing, and did not have her memo book available for inspection.  (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 18.)  Camarda admits that this command discipline was given and that she did not have her memo book, but states that her attire was appropriate and that she had reported to O'Leary before going to Court.  (*Id.* at ¶ 19; Camarda Dep. at 94–95.)  In her complaint, she alleges that, in assessing her attire, O'Leary "leered at her breast, pointed his finger within 2 inches of her décolletage, and said 'No low cut shirts,'" (the "O'Leary Comment").  (*Id.* at ¶ 99.)  During this same month, O'Leary issued command disciplines to five officers other than Camarda, all five of whom were male.  (*Id.* at ¶ 23; Command Discipline Log for 2009 (Doc. No. 47-4 at Ex. O) ("Log").)  Two of those command disciplines addressed male officers' inappropriate court attire and failure to have their memo books on hand.  (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 24.)

In July of 2009, Camarda filed a complaint with the NYPD equal employment opportunity ("EEO") office against Milone, O'Leary, and Mai, among others, alleging that she

had been subjected to a hostile work environment and targeted because of her gender. (*Id.* at ¶ 73–74.) By letter dated May 20, 2011, the NYPD EEO office informed Camarda that it found her allegations against Milone, Conwell, and Selover unfounded, and exonerated Mai and O'Leary of the allegations against them. (*Id.* at ¶ 110.)

On or about July 30, 2009, the following incident occurred. Camarda obtained a camera with pictures of graffiti on it in connection with an arrest. (Pl. Dep. at 103.) She testified that after she obtained a search warrant for the camera, she returned to the station house, put the evidence in her locker, and told Milone that she had the paperwork and was going home. (*Id.*) Milone returned her call and asked her if she had the camera with her, and Camarda told him that she had left it in her locker. (*Id.* at 104.) Sergeant William Hassler then called her and told her "[t]hey want you to come in and bring the camera." (*Id.*) Camarda responded that she had left the camera in the locker, but Hassler asked her to come in anyway. (*Id.*) She then testified that when she arrived, she retrieved the camera from her locker, and at that point Sergeant Sonner[2] told her "[t]hey know about your EEO complaint. They are calling the advocate's office to see if we can give [you] charges for not having the camera." (*Id.*) Camarda testified that she "felt they were trying to get me in trouble," (*id.* at 105), but she did not receive any discipline for this incident, (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 94).

In September 2009, Camarda requested that Selover renew his recommendation for her transfer to the Warrant Squad, which he had previously provided in 2006, 2007, and May 2009. (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 26.) Selover denied this request, saying that while she remained competent, Camarda's evaluations had worsened over the years, she had made report-writing mistakes, "there was an incident with three arrests that were very incompetent where all three were voided right away," and that she no longer deserved the recommendation to

---

[2] Neither Camarda nor defendants include Sergeant Sonner's first name in their papers.

the Warrant Squad. (*Id.* at ¶ 27.) Camarda "disputes the accuracy" of Selover's stated reasons. (*Id.*)

Camarda received two additional command disciplines before the end of 2009. On October 29, Sergeant James Conwell issued Camarda a command discipline after discovering her memo book, "unattended and unsecured, at the front desk/reception area," a violation of NYPD rules. (*Id.* at ¶ 31.) On December 28, defendant Sergeant Andrey Smirnov issued Camarda a command discipline for failing to have pepper spray while on patrol, another violation of NYPD rules. (*Id.* at ¶ 32.)

The following year, Camarda received two more command disciplines – one from Milone on September 22, 2010, for doing her nails while assigned to the Front Desk Post, (*id.* at ¶ 35), and one from Mai on October 7, 2010, for failing to secure her locker in the station house, (*id.* at ¶ 36.) Two male officers also received command disciplines in September 2010 for failing to secure their station-house lockers. (*Id.* at ¶ 37.) Camarda also received seven minor violations between November 2009 and November 2010 – the same number that Police Officer Dwyer, a male officer, received during that time period. (*Id.* at ¶ 39–40; Selover Decl. at Ex. N.)

On March 3, 2011, Camarda received a Notice of Right to Sue letter from the EEOC, and she filed this lawsuit on June 1, 2011. (*Id.* at ¶ 113; Compl. (Doc. No. 1) at ¶ 8.)

In a sworn affidavit filed on February 12, 2014, Camarda stated that Milone "incorrectly thought that I had reported [him] for conducting his car sales business on the Police Department work computers." (Aff. of Mary Ann Camarda (Doc. No. 37) ("Pl. Aff.") at ¶ 3.) In a second sworn affidavit, Camarda elaborated that Milone "had his own company called RCO Auto, which he, at the time, operated on the NYPD computer at the Station House for [CVTF]." (Second Aff. of Mary Ann Camarda (Doc. No. 47-7) ("Second Pl. Aff.") at ¶ 8.) She continued

6

that "[i]t was his erroneous opinion that I had turned him in to the Internal Affairs Bureau (IAB) for investigation," and "consequently, he began a campaign of harassment against me." (*Id.* at ¶¶ 9–10.)  Camarda does not specify a time period in which this occurred.

## STANDARD OF REVIEW

Summary judgment may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits demonstrate that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003).  In deciding whether a genuine issue of material fact exists as to an essential element, the Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party.  *Id.* at 254–55. Summary judgment may also be appropriate "if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [his] case," on which "the nonmoving party bears the burden of proof at trial." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted); *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).  To defeat defendants' motion for summary judgment, plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson*, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

Camarda alleges that all defendants discriminated against because of her gender, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), the New York City Human Rights Law ("CHRL"), and 42 U.S.C. § 1983. She also alleges that she suffered sexual harassment, a hostile work environment, and retaliation by all defendants under Title VII, the SHRL, and the CHRL. However, there can be no individual liability under Title VII. See *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). The Court therefore considers the Title VII claims only against the City, and dismisses the Title VII claims against all the individual defendants. Furthermore, Camarda does not make any allegations in her complaint nor does she present any evidence against defendants Andrey Smirnov, Robert Critelli, or former NYPD Commissioner Raymond Kelly.[3] All claims against these three defendants are therefore dismissed.

### A. Discrimination Under Title VII, the SHRL and Section 1983

Discrimination claims brought under Title VII, the SHRL, and § 1983 are analyzed under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 210 n.19 (E.D.N.Y. 2014) (collecting cases). The plaintiff bears the initial burden of making out a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). If the

---

[3] Kelly is named solely in his official capacity, and as the municipality is also named, the claims against Kelly are dismissed. *See, e.g.*, *Martinez v. O'Leary*, No. 11-CV-1405 (ENV), 2013 WL 3356983, at *3 (E.D.N.Y. July 3, 2013) ("Courts routinely dismiss official capacity claims where the plaintiff also sues the municipality.") (collecting cases).

plaintiff can establish a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action; if such reasons are offered, the burden then shifts back to the plaintiff to demonstrate that the employer's reasons are pretextual. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013).

Claims brought under the CHRL must be analyzed separately. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109, 113 (2d Cir. 2013). The CHRL must be construed "broadly in favor of discrimination plaintiffs," even when such protection is not available under federal or state law. *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011); *see also Benson v. Otis Elevator Co.*, 557 F. App'x 74, 76 (2d Cir. 2014). Under the CHRL, the plaintiff

> need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination played no role' in its actions.

*Mihalik*, 715 F.3d at 110 n.8 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 n.27 (1st Dep't 2009)). Summary judgment may not be granted under this statute unless "no jury could find defendant[s] liable under any of the evidentiary routes – *McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 114 (1st Dep't 2011); *see also Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 30 (1st Dep't 2012). However, where a plaintiff is unable to raise a triable issue of fact, summary judgment on all discrimination claims is appropriate. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 14 (2d Cir. 2013). As discussed below, plaintiff's claims fail under any standard.

1. <u>No Circumstances Give Rise to an Inference of Discrimination</u>

There is no dispute that Camarda is a member of a protected class, that she was qualified

9

for her position, or that she suffered an adverse employment action. Whether she can make out a case of discrimination either at any stage of the *McDonnell Douglas* test turns on whether she can establish the existence of circumstances giving rise to an inference of discrimination. Conclusory allegations alone are insufficient to support an inference of discrimination." *Vaughn v. City of New York*, 06-CV-6547 (ILG), 2010 WL 2076926, at *9 (E.D.N.Y. May 24, 2010) (citing *Sharif v. Buck*, 152 F. App'x 43, 44 (2d Cir. 2005)).

Camarda contends that Festa's deposition testimony, the disproportionate ratio of men to women in CVTF, and the Mai Comment show that defendants targeted her and treated her unfairly, but she does not argue that this treatment was based on her gender. Festa testified that Milone: (1) said "he was looking to hurt her"; (2) encouraged other officers to discipline her; and (3) assigned her to desk detail. (Pl. Mem. in Opp'n (Doc. No. 47-8) at 16; Festa Dep. at 12, 18.) Festa also testified that he was eventually transferred from the CVTF unit "because I wouldn't cooperate . . . in the unnecessary disciplining of Officer Camarda." (Pl. Mem. in Opp'n (Doc. No. 47-8) at 16; Festa Dep. at 30–31.) However, there is no evidence that any of these incidents were motivated by, or even related to, Camarda's gender, and she provides no further context showing that they were. "The *sine qua non* of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of* sex." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (citing *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)). Further, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Id.* (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Camarda also notes that she was only one of three or four women among twenty-five to thirty men assigned to CVTF. (Pl. Mem. in Opp'n at 17.) But Camarda does not elaborate beyond this statement, which is not itself evidence of any

discriminatory treatment. Without any evidence that Camarda suffered because of her *gender*, she cannot make out a case of discrimination under Title VII, the SHRL, or § 1983.[4]

In her opposition papers, Camarda makes mention of Mai telling Camarda "[y]ou're a girl and you can't type!" before issuing her a command discipline for refusing an order. But this remark, by itself, does not constitute sufficient evidence to support a case of employment discrimination. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (finding that "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination"); *Chan v. Donahoe*, 63 F. Supp. 3d 271, 293–94 (E.D.N.Y. 2014); *Santiesteban v. Nestle Waters N. Am., Inc.*, 61 F. Supp. 3d 221, 237 (E.D.N.Y. 2014); *see also Gioia v. Forbes Media LLC*, 501 F. App'x 52, 55 (2d Cir. 2012); *Dixon v. Int'l Fed. of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011). Even under the liberal construction of the CHRL, this type of stray comment is insufficient to raise an inference of discrimination. *See Rozenfeld v. Dep't of Design & Constr. of City of New York*, 875 F. Supp. 2d 189, 206–07 (E.D.N.Y. 2012) (finding that the comments "maybe you are too old," and "people in sports retire at 35" were insufficient to raise an inference of age discrimination where they were not made contemporaneously with any adverse employment action and were the sole instances of

---

[4] Camarda's Rule 56.1 Statement does not reference any evidence of gender discrimination. Guided by the citations in her Memorandum in Opposition, the Court conducted an independent review of the record to ascertain whether it revealed any disputed material issues of fact, mindful that it has the "broad discretion" whether to consider facts not included in the Rule 56.1 Statement. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). However, the record contains evidence of only two other incidents that could plausibly support an inference of gender-based discrimination: (1) a lieutenant telling her that her colleagues "don't want you around because you are a female;" and (2) the O'Leary Comment – O'Leary telling her "no low cut shirts," and issuing her a command discipline for improper court attire. (Camarda Dep. at 47, 59–60; Pl. Mem. in Opp'n at 16–17; Compl. at ¶ 49.) The O'Leary Comment appears in the complaint, but is not contained in or supported by any evidence cited to by Camarda (including her own affidavit or testimony), and the Court therefore does not consider it as evidence. *See* Fed. R. Civ. P. 56(e). And without additional context, the simple fact that O'Leary issued her a command discipline for improper court attire, the same citation he gave two male officers eleven days later, (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 100), is not evidence that he was discriminating against her based on her gender. Camarda notes that two witnesses testified that she was dressed properly, but whether she deserved the command discipline is irrelevant absent any indication that O'Leary issued it to her because of her gender. Moreover, the comment about her colleagues is hearsay. The Court does not consider it, as "only admissible evidence need be considered . . . in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).

alleged age discrimination). Camarda therefore fails to raise a triable issue of fact with respect to gender discrimination and all such claims must be dismissed.

> **B. Hostile Work Environment**

Camarda alleges claims of hostile work environment under Title VII, the SHRL, and the CHRL. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998)). A hostile work environment claim requires a showing that (1) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis exists for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citations omitted).[5] Generally, in order to be deemed pervasive, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted.'" *Alfano*, 294 F.3d at 374 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "Even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)) The CHRL does not impose a "severe or pervasive" bar, but a plaintiff must still link an adverse employment action to discriminatory motivation. *Lawson v. City of New York*, No. 10-CV-5238 (RJD) (CLP), 2013 WL 6157175, at *14 (E.D.N.Y. Nov. 22, 2013) (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27 (1st Dep't 2009)), *aff'd*, 595 F. App'x 89 (2d Cir. 2015).

As a preliminary matter, Camarda does not respond to, or otherwise discuss, defendants' grounds for dismissing her hostile work environment claims. Accordingly, the Court deems her hostile work environment claims abandoned. *See, e.g.*, *Thomas v. N.Y.C. Dep't of Ed.*, 938 F.

---

[5] The same standard applies to hostile work environment claims under Title VII and the SHRL. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 233 n.32 (E.D.N.Y. 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 n.4 (2d Cir. 2014)).

12

Supp. 2d 334, 354 (E.D.N.Y. 2013) (citing *Lipton v. Cnty of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).

Even if these claims survive, Camarda failed to produce sufficient evidence connecting the defendants' actions to her gender to survive summary judgment. *See Alfano*, 294 F.3d at 374 (stating that "it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex") (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). In order to prevail, plaintiff must demonstrate more than a few isolated incidents and show that "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Davis v. Passman*, 442 U.S. 228 (1979); *see also*, *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) ("the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.2d 59, 62 (2d Cir. 1992) (to create an actionable hostile environment, the discriminatory incidents "must be reated and continuous; isolated acts or occasional episodes will not merit relief.") Here, plaintiff is unable to establish anything approaching the required standard. *See Cruz v. Coach Stores*, 202 F.3d 560, 570 (2d Cir. 2000) (plaintiff must show "either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.") The incidents on which plaintiff relies – the Mai and O'Leary comments – taken together or separately do not meet this standard. Even under the more liberal standard of the CHRL, plaintiff's claims fail in the absence of facts that demonstrate that she suffered because of her gender. *See Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013); *Ortiz v. Std. & Poor's*, No 10-8490, 2011 U.S.

Dist LEXIS 99122 at *19-20 n.10 (S.D.N.Y. August 29, 2011) ("[P]lantiff's hostile work environment claim must be dismissed because it fails to state a claim under even the more permissive NYCHRL standard – that is, plaintiff does not show that he experienced disparate treatment because of his age or disability."). As Camarda points to no evidence that would create a genuine issue of material fact regarding whether she suffered sexual harassment or a hostile work environment, these claims cannot survive summary judgment and must be dismissed.

### C. Retaliation Claims Under Title VII, SHRL, and CHRL

Title VII and SHRL retaliation claims are also analyzed according to the framework set forth in *McDonnell Douglas*, and are "evaluated identically." *Shah v. MTA N.Y.C. Transit Auth.*, No. 12-CV-4276 (ERK) (RLM), 2015 WL 4139293, at *23 (E.D.N.Y. July 9, 2015). A plaintiff must establish a *prima facie* case of retaliation by showing: (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) she suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity. *See Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (internal citation omitted); *see also Quarless v. Brooklyn Botanic Garden Corp.*, No. 11-CV-5684 (CBA) (RER), 2014 WL 2767085, at *11 (E.D.N.Y. June 18, 2014). "Protected activity" refers to action taken to protest or oppose statutorily-prohibited discrimination. *See Benn v. City of New York*, 482 F. App'x 637, 638 (2d Cir. 2012) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). The protected activity alleged "must involve some sort of complaint about a type of discrimination that Title VII forbids." *Santucci v. Veneman*, No. 01-CV-6644, 2002 WL 31255115, at *3 (S.D.N.Y. Oct. 8, 2002) (citing *Brands-Kousaros v. Banco Di Napoli S.P.A.*, No. 97-CV-1673, 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997)).

Under the CHRL, a plaintiff "must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Quarless*, 2014 WL 2767085, at *11 (citing *Mihalik*, 715 F.3d at 112); *see also Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Summary judgment is only appropriate under this statute "if the plaintiff cannot show that retaliation played any part in the employer's decision." *Id.* (citing *Mihalik*, 715 F.3d at 116). However, "a plaintiff claiming retaliation must still show that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action." *Taylor v. Seamen's Soc. For Children*, No. 12-CV-3713, 2013 WL 6633166, at *23 (S.D.N.Y. Dec. 17, 2013) (citing *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009); *Dixon*, 416 F. App'x at 110 n.1.

As with her hostile work environment claims, Camarda also does not respond to or otherwise discuss defendants' grounds for dismissing her retaliation claims. Accordingly, the Court deems her retaliation claims abandoned as well. *See, e.g.*, *Thomas*, 938 F. Supp. 2d at 354 (citing *Lipton*, 315 F. Supp. 2d at 446).

But again, even if these claims survive, the facts in the record do not establish evidence sufficient to survive summary judgment. Camarda mentions her IAB complaint and her July 2009 NYPD EEO Complaint as protected activity that led to retaliation, but the IAB complaint does not qualify as a protected activity and she has not identified any retaliation that resulted from the NYPD EEO Complaint.

Camarda's own affidavits claim that Milone retaliated against her because he thought she had reported him to IAB for operating his car sales business from an NYPD computer. (Second Pl. Aff. at ¶¶ 8–10.) But a complaint to IAB regarding the improper use of NYPD property

does not constitute "protected activity," as such a complaint is not even related, let alone made in opposition to any type of unlawful discrimination. *See Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 507–08 (S.D.N.Y. 2013) (finding that the filing of a police report concerning an assault is not a protected activity under the SHRL or CHRL, as it does not relate to any employment practice of the defendants); *Montanile v. NBC*, 211 F. Supp. 2d 481, 488 (S.D.N.Y. 2002) (finding that a complaint about the assignment of certain tasks that allegedly violated company policy did not fall within the scope of Title VII); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312–13 n.11 (2004) (stating that filing a grievance complaining of conduct other than unlawful discrimination is not a protected activity subject to a retaliation claim under the SHRL or CHRL).

Camarda also asserts that defendants retaliated against her because of her July 2009 NYPD EEO Complaint. While such a complaint is arguably protected activity, she has not offered sufficient evidence that it was the basis for any retaliation. Camarda testified that Sonner told her that her supervisors knew about her NYPD EEO Complaint and attempted to have her disciplined for improperly managing the camera she seized in connection with an arrest. (Pl. Dep. at 104.) She further contends, albeit without citing to any evidence, that Selover told her she was under investigation for this conduct. (Pl. Mem. in Opp'n at 9.) Camarda also argues that Schaeffer assigned her to desk detail and Selover refused to sign her recommendation for a transfer to the Warrant Squad in retaliation for the NYPD EEO Complaint.[6] (*Id.* at 8–9.)

But critically, Camarda admits that she did not receive any discipline as a result of the

---

[6] Camarda cites the affidavit of Sergeant William Hassler in her opposition papers, but that affidavit states only that "it was apparent to me that [Milone, Schaeffer, Selover, and Mai] were targeting her for harassment and retaliating against her for filing complaints against them." (Affidavit of William Hassler (Doc. No. 47-6 at Ex. B) ("Hassler Aff.") at ¶ 13.) But such a wholly conclusory statement, lacking any supporting details, is insufficient to support a retaliation claim. *See Hicks v. Baines*, 593 F.3d 159, 166–67 (2d Cir. 2010). Furthermore, as Camarda's affidavit makes clear, Hassler is referring to the IAB complaint, which does not qualify as protected activity. (*See* Second Pl. Aff. at ¶ 10.)

16

camera incident, (Pl. Resp. to Defs.' Rule 56.1 Statement at ¶ 94), and offers no evidentiary support for her assertions that Schaeffer and Selover's actions were related to her NYPD EEO Complaint. Her testimony about desk detail does not even mention the NYPD EEO Complaint, and while she testified that Selover refused to sign her recommendation "because I made an EEO complaint," she admitted that he said nothing to suggest the EEO complaint was a reason for his refusal. (Pl. Dep. at 116–19.) In fact, Selover testified that her evaluations had worsened, she had made report-writing mistakes, "there was an incident with three arrests that were very incompetent where all three were voided right away," and that she no longer deserved the recommendation. (Pl. Resp. to Defs. Rule 56.1 Statement at ¶ 27.) Camarada does not respond to this testimony, much less offer any evidence to refute it or establish that his reasons are pretextual. She has therefore failed to establish that she suffered *any* consequence as a result of her NYPD EEO Complaint, much less a materially adverse employment action, and her retaliation claims under Title VII, the SHRL, and the CHRL must therefore be dismissed.

### D. Monell Claims Under § 1983

In addition to her claims under Title VII, the SHRL, and the CHRL, Camarda brings a *Monell* claim under § 1983 based on alleged violations of her Fourteenth Amendment rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To hold a municipality liable under § 1983, a plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Adams v. City of New York*, 837 F. Supp. 2d 108, 129 (E.D.N.Y. 2011) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). But to show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. *See, e.g., Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir. 1992). It is sufficient to show, for example, that discrimination by city officials "was so 'persistent or widespread' as to

constitute 'a custom or usage with the force of law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Patterson v. Cnty of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Sorlucco*, 971 F.2d at 870–71).

Here, in addition to failing to respond to defendants' arguments in favor of dismissing her *Monell* claim, Camarda has provided no evidence that any City or NYPD policy or custom, or failure to train, resulted in any alleged constitutional violation. Her § 1983 claims must therefore be dismissed.

## CONCLUSION

For the reasons set forth above, the court finds that there are no genuine issues of material fact remaining and defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is therefore granted. The Clerk of Court is directed to enter the accompanying judgment accordingly and close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      September 16, 2015  _____
ROSLYNN R. MAUSKOPF
United States District Judge